IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SEAWATER SEAFOODS COMPANY,
*et al*,

        Plaintiffs,                                    Case No. 6:16-cv-01607-MC

      v.

FRANK DULCICH, *et al*,                                OPINION & ORDER

        Defendants.

_____

MCSHANE, Judge:

        Plaintiffs Seawater Seafoods Co., Front Street Marine LLC, and Bret Hamrick move for an emergency temporary restraining order stating:

> Defendants are prohibited from taking any action to enforce the Lincoln County Circuit Court judgment entered in the case of *Pacific Choice Seafood Company v. Seawater Seafoods Company*, Lincoln County Case No. 16cv25418, or taking any steps to block commercial fishermen from discharging their catch at tax lot 1800 unless there is a commercially reasonable need for Pacific Seafood Group to utilize space along its dock that is in close proximity to plaintiffs' tax lot 1800.

Pl.'s Mot. Temp. Rest. Order, 4.

1 – ORDER

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008). The mere possibility of irreparable harm is not enough. Rather, the plaintiff must establish such harm is likely. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The standards for issuing a temporary restraining order are similar to those required for a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Ca. 1995). The court's decision on a motion for a preliminary injunction is not a ruling on the merits. *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

Plaintiffs filed the motion three days ago. The Court heard oral arguments at 3:00 p.m. the following day, roughly three hours after receiving defendants' response. Yesterday afternoon, plaintiffs submitted supplemental briefing. As the parties are familiar with the facts, and due to the time sensitive nature of this matter, the Court omits much background information.

At issue are several tax lots on which the parties conduct commercial fishing business. For several years, defendants leased a dock on tax lots 1400, 1401, and 1700 (lot "A") from the City of Newport. Lot A is approximately 300 feet long. Adjacent to Lot A is tax lot 1800, the lot at issue here. After defendants informed the City they wished to purchase lot 1800, the City put it and another lot up for auction. An appraiser with 40 years of experience concluded the lots for sale had little value for anyone other than defendants (who already operated a commercial business on Lot A) because the lots, being only 30 feet wide, were too small to service commercial fishing vessels.

Despite that warning from the appraisal, plaintiff Front St. purchased lot 1800 in what can only be described as a calculated business decision. After defendants declined to purchase the lot from Front St., Front St. leased the lot to plaintiff Seawater Seafoods. Seawater Seafoods planned to use the lots to offload crab and other fish from commercial fishing vessels. As the smallest commercial fishing vessel is longer than lot 1800, disputes quickly arose between the parties as vessels offloading to Seawater Seafoods protruded onto defendants' Lot A. Much litigation, including the antitrust action here, ensued. Another action, an action some might say is related to this action, proceeded in state court. The question in the state court action was whether plaintiffs here had the right, under Oregon's public trust doctrine, to protrude into Lot A when offloading vessels. The state court concluded plaintiffs here had no legal right to infringe on defendants' property rights to Lot A. Plaintiffs moved to stay that order. The day the Oregon Court of Appeals denied the stay, plaintiffs moved for the emergency TRO here.

The TRO sought here, couched in antitrust language, is simply an end run around the state court judgment. Indeed, the very first sentence of the proposed TRO states, "Defendants are prohibited from taking any action to enforce the Lincoln County Circuit Court judgment entered in [the state court action] . . . ." Pl.'s Mot. Temp. Rest. Order, 4. Plaintiffs' motion is conspicuously devoid of any substantive antitrust arguments. Instead, the motion simply claims the state court judgment will put plaintiffs out of business. *See id.* at 3 ("The Lincoln County Circuit Court judgment will force Seawater Seafoods Company completely out of business at tax lot 1800."; ("Plaintiffs move for an immediate temporary restraining order prohibiting [defendants] from aggressive use of its state law property rights to force a competitor out of business."); at 4 ("because Pacific Seafood now has the opportunity to enforce its state law property rights pursuant to the recently issued Lincoln County Circuit Court judgment and force

3 – ORDER

a small competitor in Newport out of business in violation of the antitrust laws, this Court should issue a TRO to prevent that irreparable injury.").

With the TRO, plaintiffs seek to block enforcement of the state court judgment that plaintiffs may not violate defendants' property rights by protruding into water space contained in the Lot A lease. But that discrete issue, although glossed over in ¶ 45 of the antitrust complaint, is nowhere near the focus of the allegedly anticompetitive actions at issue here. Instead, the complaint focuses mainly on defendants' placement of a hoist on the westernmost portion of Lot A, essentially abutting lot 1800. While the water rights issue determined by the state court could well place Seawater Seafoods out of business, it is essentially ancillary to the antitrust action.

I agree with defendants that the Anti-Injunction Act bars the requested TRO. "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Plaintiffs argue they do "not ask this Court enjoin any state court proceedings. Indeed, defendants' state court action remains pending and unimpeded before the Oregon Court of Appeals. Nothing in plaintiffs' motion would preclude or even delay the state court's proceedings." Reply, 2. The Anti-Injunction Act, however, applies to orders "prohibiting utilization of the results of a completed state court proceeding." *Atl. Coast Line. R. Co. v, B'Hood of Locomotive Engineers*, 398 U.S. 281, 287 (1970). The state court judgment finding plaintiffs could not intrude on defendants water rights is the outcome of a completed state court proceeding.

Plaintiffs' argument that the proposed TRO would not preclude any state court proceedings because the parties are free to continue their state court appeals is unconvincing. That argument turns the purpose of the Anti-Injunction Act on its head. State and federal courts

4 – ORDER

operate in "two essentially separate legal systems." *Id.* at 286. "Each system proceeds independently of the other with ultimate review in this [United States Supreme Court] of the federal questions raised in either system." *Id.* The Act is meant to reduce "conflicts and frictions" between the two systems. *Id.*

Plaintiffs' requested TRO would nullify the outcome of the state court proceeding and is therefore barred under the Act. Contrary to plaintiffs' argument, nothing in the state court judgment will limit this court from exercising its jurisdiction over the antitrust claims at issue. As noted, the discrete water rights issue at the heart of the state court judgment is largely ancillary to the antitrust issues here.

Although I conclude the Anti-Injunction Act bars entry of the proposed TRO, I also note that under these facts, as related to the discrete issue of the waterway rights, it appears at first glance that the balance of equities do not tip in plaintiffs' favor. Front St. Marine LLC admits reading the appraisal before purchasing Lot 1800. That appraisal specifically stated that because the lots were narrower than any commercial fishing vessels, the lots had little commercial processing or offloading value to anyone other than defendants. Despite knowing that, Front St. Marine LLC went ahead and purchased the lots anyway, with the (perhaps erroneous) notion that they held "value." The equities on the waterway issue do not appear to lie with plaintiffs.

IT IS SO ORDERED.

DATED this 18th day of August, 2017.

        /s/ Michael McShane
        Michael J. McShane
        United States District Judge