IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SEAWATER SEAFOODS COMPANY, an
Oregon corporation, BRET HAMRICK, an
individual, and FRONT ST. MARINE LLC,
an Oregon limited liability company,

        Plaintiffs,

v.

FRANK DULCICH, an individual,
PACIFIC SEAFOOD GROUP dba
PACIFIC SHRIMP COMPANY,
DULCICH REALTY ACQUISITION,
LLC, an Oregon limited liability company,
PACIFIC HOOKER, LLC, an Oregon
limited liability company, and PACIFIC
FISHING LLC, an Oregon limited liability
company,

        Defendants.

No. 6:16-cv-01607-MC

OPINION AND ORDER

MCSHANE, Judge:

      Plaintiffs Seawater Seafoods Company, Bret Hamrick, and Front St. Marine LLC bring this antitrust and tort action against Pacific Seafood Group, Frank Dulcich, Dulcich Realty Acquisition, Pacific Hooker, LCC, and Pacific Fishing LLC. On November 20, 2017, Defendants moved for summary judgment on Plaintiffs' antitrust claims. In response, and to avoid summary judgment, Plaintiffs moved for leave to file an amended complaint, removing their state law claims and substituting a new theory of antitrust liability. Both motions are now before the Court. Because the relief sought by Plaintiffs in their operative Complaint is barred by the Anti-Injunction Act, and granting them leave to remedy this deficiency would prejudice Defendants and cause undue delay, Plaintiffs' action is DISMISSED with prejudice.

Page 1 – OPINION AND ORDER

## BACKGROUND

The present dispute arises from the alleged conduct of Pacific Seafood Group, Frank Dulcich, Dulcich Realty Acquisition, Pacific Hooker, LCC, and Pacific Fishing LLC (collectively, "Pacific Seafood" or "Defendants") on their Yaquina Bay property and its interference with the ability of Seawater Seafoods Company, Bret Hamrick, and Front St. Marine LLC (collectively, "Seawater" or "Plaintiffs") to successfully operate a seafood processing business on neighboring land. As the parties are familiar with the facts, and only a limited subset is relevant to the pending motions, the Court omits significant background information.

Seawater Seafoods Company is a live crab processor owned by Bret Hamrick. Compl. ¶ 4.[1] In 2014, Seawater Seafoods Company leased waterfront property from Front St. Marine LLC in Newport, Oregon. Snider Decl. Ex. C at 11 (Webster Depo. 141:9-22). That property, comprised of two noncontiguous parcels, houses dock space running along Yaquina Bay. Snider Decl. Ex. A at 2 (Wright Decl. ¶ 3). Seawater Seafoods Company leased the property in hopes of transferring its unloading operations from the Newport public docks to the private dock space bordering the two strips of land. Compl. ¶¶ 28, 45.

Pacific Seafood Group is a combination of entities, including Pacific Shrimp Company, owned by Frank Dulcich. Compl. ¶¶ 7-9. These entities process coldwater shrimp, trawl-caught groundfish, Pacific whiting, and Dungeness crab, among other seafoods. Snider Decl. Ex. A at 1 (Wright Decl. ¶ 2). Pacific Seafood Group, through Pacific Shrimp Company, leases property from Dulcich Realty Acquisition along Yaquina Bay.[2] Compl. ¶ 9. As relevant here,

---

[1] The Court cites Plaintiffs' Complaint only in so far as the facts alleged therein are admitted by Defendants in their Answer or contextual information immaterial to resolution of the pending motions. If a contextual fact stated in the Complaint is contested by Defendants, and unsupported by the record, the Court describes it as an allegation.

[2] The two remaining defendants, Pacific Hooker, LLC and Pacific Fishing LLC, own and manage, respectively, a commercial fishing vessel. Compl. ¶¶ 9-10. Their alleged conduct is not directly relevant to the pending motions.

Page 2 – OPINION AND ORDER

Defendants' parcels border those owned and occupied by Plaintiffs. Snider Decl. Ex. A at 1 (Wright Decl. ¶ 2). The ownership and dimensions of the parcels is as follows:

| Yaquina Bay | | | |
|---|---|---|---|
| Tax Lot 2000<br><br>25 ft.<br><br>Plaintiffs | Tax Lot 1900<br><br>25 ft.<br><br>Defendants | Tax Lot 1800<br><br>30 ft.<br><br>Plaintiffs | Tax Lots 1700, 1400, and 1401<br><br>300 ft.<br><br>Defendants |

Snider Decl. Ex. A at 1 (Wright Decl. ¶ 7).

Plaintiffs' parcels are, individually, too small to accommodate the mooring of most commercial fishing vessels. Snider Decl. Ex. A at 5 (Wright Decl. ¶ 10). As a result, to make deliveries, many boats visiting Plaintiffs' docks must overhang into the waterway just in front of Defendants' property, thereby obstructing a portion of Defendants' dock space. Snider Decl. Ex. E at 14 (Hamrick Depo. 173:7-11). Shortly after Plaintiffs began accepting deliveries at their new docks, Defendants objected to this practice. Snider Decl. Ex. A at 7 (Wright Decl. ¶ 14). Plaintiffs allege that, to retaliate for these intrusions and, more generally, the additional competition from Plaintiffs, Pacific Seafood engaged in a course of anticompetitive and tortious conduct throughout the 2014-15 and 2015-16 Dungeness crab seasons. Compl. ¶ 32.

The alleged conduct includes "placing a large dumpster . . . full of dead crab" next to Tax Lot 1800, regularly leaving doors open to allow entry of vermin into the parties' shared processing space, allowing ammonia gas to leak out of Defendants' refrigeration system and onto Plaintiffs' property, and installing a water-facing surveillance camera intended to intimidate fisherman. Compl. ¶¶ 33-39. Plaintiffs further allege that, without any legitimate business purpose, Defendants frequently boxed in Plaintiffs' Tax Lot 1800—making it difficult to overhang boats into the waterway in front of

Defendants' docks—by mooring vessels near the edge of Tax Lots 1900 and 1700. Compl. ¶¶ 33-34. Finally, Plaintiffs allege that Defendants placed an unloading hoist on Tax Lot 1700, near the shared property line with Tax Lot 1800, for the sole purpose of congesting the waterway in front of Defendants' property and making it difficult for Plaintiffs to receive deliveries. Compl. ¶¶ 46-49.

On October 27, 2015, Plaintiffs filed suit in Lincoln County Circuit Court. Daniels Decl. Ex. 1. At issue in that action was whether, under Oregon's public trust doctrine, Seawater had a right to protrude into Pacific Seafood's waterway. Daniels Decl. Ex. 1 at 9-17 (State Complaint ¶¶ 25-29). When the state court declined Plaintiffs' request for a temporary restraining order ("TRO") and a brief armistice between the parties fell apart, Seawater voluntarily dismissed its state action. Daniels Decl. Ex. 7. Defendants, however, proceeded to file their own state action, seeking the inverse declaration, namely that Pacific Seafood's property rights were superior and that Seawater had no right to overhang vessels or otherwise interfere with the dock operations of Pacific Seafood. Daniels Decl. Ex. 11 at 5-7 (Defendants' State Complaint ¶¶ 16-19).

On May 30, 2017, after more than a year of litigation, the state court entered summary judgment in favor of Pacific Seafoods. Snider Decl. Ex. H at 2-5 (Tr. 83:9-84:4, 85:17-86:1). As part of that disposition, the state court awarded Pacific Seafood declaratory and injunctive relief in a separately issued judgment ("State Court Judgment"), which includes the following provisions:

(a) [Pacific Seafood], as riparian owners or lessees, have a right of access to the water in front of the Pacific Seafood Tax Lots (tax lots 1400, 1401, 1700, and 1900);

(b) [Pacific Seafood's] right of access to the water in front of the Pacific Seafood Tax Lots is superior to the rights of Seawater or Front St. Marine, who engage in a neighboring private enterprise;

(c) [Pacific Seafood's] rights are violated by any obstruction in front of the Pacific Seafood Tax Lots placed by Seawater or Front St. Marine (including any vessels moored to the Seawater Tax Lots (tax lots 1800 and 2000) at Seawater or Front St. Marine's direction behest, or consent), including vessels which are moored at the Seawater Tax Lots but which overhang in front of the Pacific Seafood Tax Lots;

(d) Front St. Marine and Seawater have no right to interfere with Plaintiffs' mooring of vessels in front of the Pacific Seafood Tax Lots;

Page 4 – OPINION AND ORDER

Snider Decl. Ex. I at 1-2 (State Court Judgment ¶ 1(a)-(d)). The trial court and Oregon Court of Appeals both refused to stay the State Court Judgment and, most recently, Plaintiffs' appeal was dismissed by the Oregon Court of Appeals. Snider Decl. Ex. L.

On August 9, 2016, in the midst of the state court litigation, Plaintiffs filed the instant suit in federal court. The Complaint, like that in state court, alleges common law claims for negligence, trespass, and interference with business relations, but also adds two new federal claims for antitrust violations under Section 2 of the Sherman Antitrust Act. Compl. ¶¶ 50-77. Although Plaintiffs request economic damages for their tort claims, the only relief sought for the alleged antitrust violations is an injunction "prohibiting [Pacific Seafood Group] from siting a hoist in a location and manner that interferes with Seawater's business operations." Compl. ¶¶ 52, 56.

On September 9, 2016, Defendants unsuccessfully moved to dismiss Plaintiffs' federal and state law claims. Nearly a year later, and on the same day that Pacific Seafood prevailed in its state court action, Plaintiffs moved for a TRO to enjoin Defendants from enforcing the State Court Judgment. The Court denied that request on August 18, 2017. Several weeks later, the Court set trial for April 16, 2018 and established January 16, 2018 as the discovery deadline. Most recently, on November 20, 2017, Defendants moved for summary judgment on Plaintiffs' antitrust claims. In response, and to avoid summary judgment, Plaintiffs moved for leave to file an amended complaint on December 11, 2017. After briefing and oral argument, the motions are now before the Court.

## STANDARD OF REVIEW

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the case and an issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citation omitted). When ruling on a

Page 5 – OPINION AND ORDER

motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the movant carries its burden, then the non-movant must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (citation omitted).

## DISCUSSION

There are currently two motions before the Court. The first is Plaintiffs' Motion for Leave to File First Amended Complaint. In their motion, Plaintiffs seek leave to, inter alia, substitute a new theory of antitrust liability, remove their prayer for injunctive relief, and include economic damages as part of their antitrust claims. Pls.' Mot. Amend 2-3. The second motion is Defendants' Motion for Summary Judgment. Defendants contend that the only antitrust relief sought by Plaintiffs in their operative Complaint is barred by the Anti-Injunction Act and, even if it were not, that Plaintiffs lack standing to assert their original and amended antitrust claims.[3] Defs.' Mot. Summ. J. 17-31. Since the disposition of Plaintiffs' motion will control the claims at issue on summary judgment, the Court addresses it first. For the reasons stated below, Plaintiffs' motion is DENIED and Defendants' motion is GRANTED.

**I.  Plaintiffs' Motion for Leave to File First Amended Complaint.**

Plaintiffs argue that their motion "is a garden variety" first request for leave to amend that "falls squarely within the liberal amendment policy embraced by the Federal Rules of Civil Procedure and controlling Supreme Court precedent." Pls.' Reply Br. 2. They contend that the proposed amendments would merely "narrow[]" the action by withdrawing claims and theories

---

[3] Based on Plaintiffs' representation that they would withdraw their state law claims, Defendants have not addressed the substance of those claims in their briefs. *See* Defs.' Mot. Summ. J. 4 n.2. The claims nevertheless remain part of the operative Complaint. As noted below, the Court declines to exercise supplemental jurisdiction over the state law claims following dismissal of Plaintiffs' federal claims.

of relief and would not prejudice Defendants since the parties have yet to engage in any discovery. Pls.' Mot. Amend 3. The facts underlying their new predatory pricing claims, Plaintiffs further note, only recently came to the attention of counsel and therefore could not have been asserted in the operative Complaint. Pls.' Mot. Amend 4. In response, Defendants argue that they would be prejudiced by amendment and that Plaintiffs unduly delayed filing their motion. Defs.' Resp. Br. 11-15. They also contend that Plaintiffs' motion is made in bad faith and, even if granted, would be futile. Defs.' Resp. Br. 11-15.

The decision to grant or deny leave to amend a complaint lies "within the sound discretion of the trial court." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). That discretion is constrained by Fed. R. Civ. P. 15(a), which provides that leave to amend shall be "freely give[n] . . . when justice so requires." The Supreme Court has warned lower federal courts to "heed carefully the command of Rule 15(a) . . . by freely granting leave to amend when justice so requires." *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir. 1986) (internal citations and quotation marks omitted); *see also Webb*, 655 F.2d at 979 (instructing that amendment be allowed with "extreme liberality"). To that end, the pleadings process should be used to "facilitate a proper decision on the merits, and not to erect formal and burdensome impediments in the litigation process." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (internal citations and quotation marks omitted).

Nevertheless, the strong policy in favor of allowing amendment "must be tempered" with considerations of fairness to the non-moving party. *Schlacter-Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991). It is well established, for instance, that a court may deny leave to amend based on "undue delay, bad faith in seeking amendment, or undue prejudice to the party opposing amendment." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393,

1398 (9th Cir. 1986); *see also Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (describing prejudice as "the most important factor."). Similarly, "late amendments to assert new theories" are disfavored when "the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Id.* A plaintiff's motion for leave to amend her complaint, as such, "is not a vehicle to circumvent summary judgment." *Schlacter-Jones*, 936 F.2d at 443 (citations omitted).

The need to extend discovery during the pendency of a motion for summary judgment may alone serve as the basis for denying leave to amend. In *M/V American Queen v. San Diego Marine Construction Corp.*, the plaintiffs sought to amend their complaint in response to a motion for summary judgment. 708 F.2d 1483, 1492 (9th Cir. 1983). The amended complaint added claims for fraud and failure to disclose on top of the original claims for breach of contract. *Id.* In affirming the district court's denial of leave to amend, the Ninth Circuit emphasized that the plaintiffs had waited over a year to make their motion and only did so in response to the motion for summary judgment. *Id.* The court was particularly concerned that, after eighteen months, the new allegations would "totally alter the basis of the action" and "necessitat[e] additional discovery." *Id.* This combination of delay, additional discovery, and the pending motion made for "a proper exercise of discretion by the trial court." *Id.* (citations omitted).

Even absent a pending motion for summary judgment, a court may deny leave to amend if a plaintiff seeks to add a new claim just weeks before the close of discovery. In *Solomon v. North American Life & Causality Insurance Co.*, for example, the plaintiff waited until just two weeks before the close of discovery, and ten months after filing her complaint, to propose a new cause of action. 151 F.3d 1132, 1139 (9th Cir. 1998). The district court denied her motion and the Ninth Circuit affirmed, holding that adding a claim at such a "late date" would both cause

prejudice and, without some showing of good cause, constitute undue delay. *Id.* In particular, the appellate court noted, "allowing the motion would have required re-opening discovery" to flesh out the new allegations and, as a result, unreasonably "delay[ed] the proceedings." The court concluded that the delay and prejudice of extending discovery, even absent a pending motion, meant that "the district court did not abuse its discretion." *Id.*

A court may even infer a bad faith or dilatory motive when a plaintiff relies exclusively on proposed amendments to oppose a motion for summary judgment. In *Lockheed Martin Corp. v. Network Solutions, Inc.*, for instance, the Ninth Circuit agreed with the lower court that using amendment as a tactic to avoid summary judgment at least permitted the inference of a dilatory motive. 194 F.3d 980, 986 (9th Cir. 1999). Similarly, the court in *Schlacter-Jones* noted that an attempt to circumvent a pending motion for summary judgment "weighs heavily against allowing leave to amend." 936 F.2d at 443. This position is consistent with other cases in the Ninth Circuit. *See, e.g.*, *Ennis v. Sigurdson*, 185 F.3d 866 (9th Cir. 1999) ("[T]he act of granting leave to amend so that plaintiffs can avoid defendants' motion for summary judgment falls outside the interests of justice."); *Forty-Niner Sierra Res., Inc. v. Subaru of Am., Inc*., 416 F. Supp. 2d 861, 871 (E.D. Cal. 2004) (finding that "Plaintiff's motive weighs against granting leave to amend" where plaintiff failed to present any evidence in opposition to summary judgment).

Here, the Court agrees with Defendants that Plaintiffs' motion was unduly delayed and, if granted, would prejudice Defendants. Like the plaintiffs in *M/V American Queen* and *Solomon*, who waited eighteen and ten months before proposing amendments, Plaintiffs waited over sixteen months before moving to amend. Moreover, as in *Solomon*, Seawater filed its motion on the eve of the discovery deadline, despite knowing all the facts underlying its proposed predatory pricing claim since at least the close of the 2016-17 Dungeness crab season in August 2017. The

only explanation offered for this minimum five-month delay is that Plaintiffs' counsel did not himself learn of the facts until November. It was, however, counsel's responsibility to communicate with his client and stay abreast of relevant developments. More to the point, Plaintiffs could have sought economic damages for the alleged antitrust violations at *any point* in the litigation. At the very least, following this Court's denial of their requested TRO in August, Plaintiffs were on notice that, without amending their Complaint to allege economic damages, the federal claims might be barred by the Anti-Injunction Act.

Although delay alone is an insufficient ground for denying leave to amend, *Webb*, 655 F.2d at 980, allowing Plaintiffs to assert new antitrust claims would also prejudice Defendants. As in *M/V American Queen* and *Solomon*, Plaintiffs' proposed claims would alter the basis of their action and require discovery well beyond that needed for the original claims. In particular, whereas the operative antitrust claims rely on the essential facilities doctrine and center on the physical placement of a hoist on Defendants' property, the newly proposed claims rely on a more abstract predatory pricing theory and center on the purchase and resale prices of Dungeness crab. These are legally distinct claims requiring different evidentiary support, expert analysis, and legal defenses. The additional time and costs associated with reopening discovery and defending against these claims would prejudice Defendants.

Plaintiffs counter that Defendants cannot be prejudiced since, regardless of the now-passed deadline, the parties have yet to engage in any discovery. This assertion lacks important context. First, Defendants have refrained from serving discovery requests because they are satisfied with the information obtained through the state-court discovery process. A need to engage in additional discovery would therefore only exist if Plaintiffs were to alter the basis of their action. Second, the paucity of discovery by Plaintiffs stems more directly from their own

only explanation offered for this minimum five-month delay is that Plaintiffs' counsel did not himself learn of the facts until November. It was, however, counsel's responsibility to communicate with his client and stay abreast of relevant developments. More to the point, Plaintiffs could have sought economic damages for the alleged antitrust violations at *any point* in the litigation. At the very least, following this Court's denial of their requested TRO in August, Plaintiffs were on notice that, without amending their Complaint to allege economic damages, the federal claims might be barred by the Anti-Injunction Act.

Although delay alone is an insufficient ground for denying leave to amend, *Webb*, 655 F.2d at 980, allowing Plaintiffs to assert new antitrust claims would also prejudice Defendants. As in *M/V American Queen* and *Solomon*, Plaintiffs' proposed claims would alter the basis of their action and require discovery well beyond that needed for the original claims. In particular, whereas the operative antitrust claims rely on the essential facilities doctrine and center on the physical placement of a hoist on Defendants' property, the newly proposed claims rely on a more abstract predatory pricing theory and center on the purchase and resale prices of Dungeness crab. These are legally distinct claims requiring different evidentiary support, expert analysis, and legal defenses. The additional time and costs associated with reopening discovery and defending against these claims would prejudice Defendants.

Plaintiffs counter that Defendants cannot be prejudiced since, regardless of the now-passed deadline, the parties have yet to engage in any discovery. This assertion lacks important context. First, Defendants have refrained from serving discovery requests because they are satisfied with the information obtained through the state-court discovery process. A need to engage in additional discovery would therefore only exist if Plaintiffs were to alter the basis of their action. Second, the paucity of discovery by Plaintiffs stems more directly from their own

failure to schedule a Rule 26(f) conference. Although Plaintiffs may have believed that holding a Rule 16 conference obviated the need for a discovery plan, they should have brought any such concern to the Court or moved to compel Defendants' participation. It is disingenuous for them to raise that concern—indeed, any discovery-specific concern—three months later and attempt to use their own foot dragging as justification for extended discovery on unrelated claims. Finally, to the extent Plaintiffs contend that discovery has been on hold while the parties await access to PacFIN data, they offer no reason for failing to gather other relevant information during the same period. Any deficiencies in the record are therefore a product of Plaintiffs' own making.[4]

Plaintiffs' failure to oppose summary judgment on the merits, moreover, raises the inference of a dilatory motive. Seawater offers no defense of its operative antitrust claims, conceding that the Anti-Injunction Act "likely precludes" this Court from granting the requested injunctive relief. Instead, similar to the plaintiffs in *Lockheed* and *Shlachter-Jones*, Seawater argues that Defendants' motion is mooted by the proposed FAC. But plaintiffs have been on notice of the potential deficiencies with their requested antitrust relief since this Court denied their motion for a TRO in August. As noted above, they could easily have sought leave to include economic damages or some other theory of antitrust liability months before their present motion. This raises the reasonable inference that Plaintiffs' motion to amend, filed on the same day as their brief in opposition to summary judgment, is simply designed to draw out the

---

[4] The Court also notes that, until now, Plaintiffs neither indicated that PacFIN data would be required in this action nor moved for an order granting the parties access to that data. Although the data is at issue in a related case pending before the Court, *see Boardman v. Pac. Seafood Grp.*, No. 1:15-cv-00108, and could be relevant to the issue of Defendants' market share in the present case, it is not the Court's responsibility to discern what evidence Plaintiffs intend to rely upon. If Plaintiffs required access to the data, they should have indicated as much and moved for an extension of the discovery deadline. They did not. Moreover, the suggestion that the parties have been in a holding pattern as they and the Court await access to the data is, at best, naïve and, at worst, frivolous—Plaintiffs are well aware that access to the PacFIN data requires a court order for which they have yet to move. *See* 16 U.S.C. § 1881a(b)(1)(D). Although they may have assumed that the orders granting access in the *Boardman* case would govern this action, those orders clearly state that they are limited to the parties in that case.

litigation. It is firmly within the Court's discretion to deny Plaintiffs' motion based on their dilatory motive, undue delay, and the resulting prejudice to Defendants.[5]

## II. Defendants' Motion for Summary Judgment on the Antitrust Claims.

Defendants move for summary judgment on Plaintiffs' two antitrust claims. They argue that interfering with the location of a hoist on their property—the only antitrust relief sought by Plaintiffs—would undermine the State Court Judgment and is therefore barred by the Anti-Injunction Act, 28 U.S.C. § 2283. Defs.' Mot. Summ. J. 17-21. In the alternative, Defendants argue that Plaintiffs lack standing to assert their antitrust claims and that Pacific Seafood's docks are not an essential facility. Defs.' Mot. Summ. J. 21-31. As noted above, Plaintiffs offer no defense of their federal claims and concede that the Anti-Injunction Act "likely precludes" the Court from granting the requested injunctive relief, instead seeking leave to amend. Pls.' Resp. Br. 2. Since Plaintiffs have been denied leave to amend, the Court agrees that the Anti-Injunction Act entitles Defendants to summary judgment on both antitrust claims.

The Anti-Injunction Act prohibits a federal court from granting "an injunction to stay proceedings in a State court." 28 U.S.C. § 2283. This prohibition "cannot be evaded by addressing [an] order to the parties or prohibiting utilization of the results of a completed state proceeding." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970). The statute is qualified by three narrow exceptions, which allow a federal court to intervene in state court proceedings when "expressly authorized by act of Congress, . . . where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283; *see also Atl. Coast Line R.R. Co.*, 398 U.S. at 287 ("[T]he exceptions should not be enlarged by loose statutory construction."). "Any doubts as to the propriety of a federal injunction against state

---

[5] Because a finding of prejudice and undue delay is alone sufficient for a district court to deny leave to amend, *see, e.g.*, *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387-89 (9th Cir. 1990), the Court takes no position on the futility of amendment argument advanced by Defendants. *See* Defs.' Resp. Br. 17-23.

court proceedings," the Supreme Court has cautioned, "should be resolved in favor of permitting the state courts to proceed."[6] *Atl. Coast Line R.R. Co.*, 398 U.S. at 287.

A federal court is prohibited from issuing an injunction which, although by its terms is not directed at a state judgment, would indirectly interfere with the relief awarded by a state court. In *L.A. Memorial Coliseum Commission v. City of Oakland*, the owners of a Los Angeles stadium tried to prevent the City of Oakland from taking ownership of an Oakland-based football franchise that planned to move from Oakland to Los Angeles. 717 F.2d 470, 471 (9th Cir. 1983). While the City of Oakland's eminent domain action was pending in state court, the Los Angeles stadium owners filed an antitrust suit in federal court and moved for an order enjoining, among other things, "any . . . future owner" of the franchise "from moving [it] back to Oakland."[7] *Id.* at 473. The district court denied the motion and the Ninth Circuit affirmed, holding that, although the state judgment would be limited to the narrow question of ownership, restricting the eventual owner's free use of their property would still violate the Anti-Injunction Act. *Id*. The requested relief, the court concluded, was "no more than a transparent attempt to avoid the [Anti-Injunction Act's] effect." *Id.* (citing *Atl. Coast Line R.R. Co.*, 398 U.S. at 287).

Here, the antitrust relief sought by Plaintiffs would, at the very least, indirectly interfere with the relief granted by the state court. The State Court Judgment declares (1) that Defendants

---

[6] Although the Supreme Court has recognized that Section 16 of the Clayton Act "expressly authorize[s]" an exception to the Anti-Injunction Act, *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 633-34 (1977) (Blackman, J., concurring and controlling), that exception is not raised by Plaintiffs and is inapplicable here. Unlike the scenario described in *Vendo*, Defendants never engaged in a course of "sham" state-court litigation which would itself violate antitrust laws by "impos[ing] high costs on rivalrous behavior, discourag[ing] competition, [and] rais[ing] prices to consumers." *Vill. of Bolingbrook v. Citizens Utilities Co. of Ill.*, 864 F.2d 481, 483 (7th Cir. 1988) (Easterbrook, J.); *see also Vendo*, 433 U.S. at 634 ("[I]t cannot be said on this record that [defendant] was using the state-court proceeding as an anticompetitive device in and of itself."). Defendants filed only one lawsuit in state court and were the prevailing party; Plaintiffs could have just as easily raised an antitrust defense in that action. It cannot be said that "the only way to give the antitrust laws their intended scope" would be to enjoin Defendants from using the State Court Judgment. *Vendo*, 433 U.S. at 644.

[7] The most immediate relief sought by the stadium owners was an injunction of the ongoing state proceedings. It was only when that argument failed, and it became clear that the city would likely prevail at the state level, that they reframed the requested relief in terms of location rather than the state proceedings or ownership.

have a superior right to use the waterway in front of its docks, (2) that this right is violated when vessels moored on Plaintiffs' property overhang into that area, and (3) that Plaintiffs have no right to interfere with Defendants' mooring of vessels anywhere along its own docks. Seawater does not challenge the state court's recognition of Defendants' superior property interest in the waterway and docks, but rather, like the plaintiff in *Memorial Coliseum*, seeks to circumvent the Anti-Injunction Act by interfering with Defendants' exercise of that right. Specifically, Plaintiffs request an injunction "prohibiting PSG from siting a hoist [on its property] in a location and manner that interferes with Seawater's business operations." Compl. ¶¶ 52, 56. The relief is not framed in terms of allowing Seawater to overhang boats onto Defendants' property or preventing Defendants from mooring boats on their own property, but its practical effect would be precisely that. Indeed, the *only* reason Plaintiffs seek relocation of the hoist is to stop Defendants from mooring and offloading boats in a location which prevents Plaintiffs from overhanging their boats into Defendants' waterway. Compl. ¶¶ 36, 47-48.

Although Plaintiffs allege anticompetitive conduct beyond the inconvenient siting of Defendants' hoist, these allegations cannot save the antitrust claims. *See, e.g.*, Pls.' Resp. Br. 2; Compl. ¶¶ 15, 37 (describing harassment, intimidation, and retaliation against Plaintiffs and their suppliers). Plaintiffs ask the Court only to intervene with the placement of Defendants' hoist and seek *no other remedy*—including obvious economic damages—for the additional conduct alleged in their Complaint. The result is that, regardless of whether or not Plaintiffs can persuade a trier of fact that the other anticompetitive conduct occurred, the singular effect of prevailing on the antitrust claims would be to force relocation of Defendants' hoist. As already discussed,

however, such a result would undermine the State Court Judgment and violate the Anti-Injunction Act. The Court must therefore grant summary judgment in favor of Defendants.[8]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to File First Amended Complaint is DENIED. Defendants' Motion for Summary Judgment is GRANTED. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. This action is therefore DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 23rd day of March, 2018

/s/ Michael J. McShane
Michael J. McShane
United States District Judge

---

[8] Defendants further argue that the federal full faith and credit statute, 28 U.S.C. § 1738, precludes Plaintiffs from bringing their antitrust claims in federal court. Defs.' Mot. Summ. J. 20 n.5 (citing *Vill. of Bolingbrook*, 864 F.2d at 485). That statute provides that federal courts must give a state court judgment the same preclusive effect as would another court of that state. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). Defendants contend that, because Plaintiffs failed to raise their antitrust theory as a defense in the state court action, Oregon law precludes them from raising it in future state actions and, in turn, this federal action. Under Oregon law, however, failure to assert a defense does not, without more, have any preclusive effect on future actions. As such, despite Defendants' unsupported contention to the contrary, 28 U.S.C. § 1738 does not "independently preclude" Plaintiffs from asserting these or any other antitrust claims in federal court.